Wanamaker, J.,
dissenting. Sniegowski was employed in the operation of a heavy punching press. While so employed, the press came down unexpectedly, crushed and mangled his hand, especially his fingers, leaving the hand a mere stump.
Not content with the partial and limited compensation provided by the Workmen’s Compensation Act, he brought suit in the court of common pleas *162 of Lucas county, alleging violation of a lawful requirement upon the part of his employer. He pleaded that he had been peremptorily ordered to work on a dangerous machine, in a defective condition, wholly unguarded, in violation of Section 1027, General Code, which is the general statute for safeguarding dangerous machinery and protecting the life and limb of employes.
The court of common pleas held against him on the law. The court of appeals held with him on the law, and reversed the court of common pleas, remanding the case for a new trial.
The supreme court now, by a bare majority of its members, Judges Hough, Robinson, Jones and Matthias concurring, reverses the court of appeals, and holds against Sniegowski in final judgment.
In brief, the ground upon which this judgment is based, which will be more fully set forth later, is that the statute, Section 1027, General Code, imposes only a common-law duty, ordinary care, and holds the employer only for common-law liability. The majority therefore hold that that statute has no force and effect, and is not a lawful requirement, as the term is used in the constitution and the statutes. If it is not a civil “lawful requirement,” clearly it is not a criminal “lawful requirement,” though upon its face it purports to be. Being neither, it is nothing — nothing but a scrap of paper.
The statute is dead as a vital or operating force to protect the employe, so long as this decision shall stand. This death of the statute results in great and irreparable loss to Sniegowski. It represents, however, a much greater and more irreparable loss to the army of working people in the shops and factories.
*163 The slaughter of this statute, lowering and lessening the safeguards of dangerous machinery, will naturally and necessarily lead to the injury of many lives and limbs among employes, which will necessarily follow as long as the employer is immune from any liability, civil or criminal, beyond the common law, which injuries this court now holds must be satisfied out of the workmen’s compensation fund, however meager, partial or inadequate. The severity of the injuries will be increased, and the compensation correspondingly decreased, under the rules and regulations of the Workmen’s Compensation Act, as compared with the injuries suffered and the compensation recovered therefor in the courts where the master’s negligence is clear and culpable.
Humanity, reason, the statutes, the constitution, sound economic and industrial policy, the spirit of the 20th century, and fair play, cry out against such a judgment.
I protest against it as a principle or precedent. I confidently expect to see its early and righteous reversal.
The importance of this decision to millions of men and women in Ohio, their safety and their welfare, has led me to go to considerable labor and detail in the presentation of this opinion.
The majority have prepared no opinion in this case. In the journal entry it is simply announced that the court of appeals below is “reversed on the authority of Patten v. The Aluminum Castings company, this day decided by this court.”
About a year ago, when the Patten case was first announced, holding the scaffolding statute not within the words of the constitution “any lawful re *164 quirement,” I announced that that was the beginning of the slaughter of the statutes by the supreme court of Ohio.
It appears now that I was no false prophet, for since that time a rehearing has been granted in that case, the former judgment has been adhered to, and in addition thereto a large number of other safety statutes have been invalidated, shorn of all their strength, upon the ground that they are not “lawful requirements.”
The. special statute involved in this Smegowski case is Section 1027, General Code, dealing with the protection of the employe who comes in contact with dangerous machinery. This statute provides for the safeguarding of such machinery, so as to prevent, or at least reduce, injuries. This statute had been approved by all our courts time and time again. It had been upon our statute books for a generation.
It was considered a 100 per cent, lawful requirement before the adoption of the Constitution of 1912.
Since the adoption of the Constitution of 1912 it has become a 100 per cent, unlawful requirement.
What was done in the new Constitution of 1912 to invalidate this lawful requirement? What was adopted in that constitution whereby a lawful requirement before 1912 should become an unlawful requirement after 1912?
The constitution-makers of 1912 evidently intended to enlarge the conservation laws of Ohio, by enlarging the powers of the general assembly in that behalf. Accordingly they proposed, and the people overwhelmingly adopted, Section 34, Article II, which reads:
*165 “Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employes; cmd no other provision of the constitution shall impair or limit this power.”
Prior to 1912 these various protective statutes were enacted under the general police power of the state, without any special grant expressly authorizing the same in the state constitution, but the constitution-makers of 1912, in the spirit of the times that brought about that convention and gave it its progressive humanitarian majority, saw fit to expressly authorize the legislature and give it the largest possible power in that behalf.
Strange that it should now turn out that this express enlargement of the power given the general assembly of Ohio should result in destroying all the protective statutes enumerating lawful requirements in existence Avhen the new amendments of 1912 were adopted.
The constitution by its schedule expressly saved all statutes not inconsistent with the provisions of the various amendments, and it would take a strange stretch of the imagination to hold that these protective statutes, that these lawful requirements under Section 1027, General Code, were inconsistent with Section 34, Article II of the new Constitution of 1912.
It all illustrates the plain practical doctrine that constitutions may propose, but courts dispose.
It is striking strange that the supreme court of Ohio in the nearly ten years since the adoption of *166 this amendment, Section 34, has not made the slightest reference, approval or application of it, so far as I can recollect. The net result is this, what the sovereign people in 1912 authorized and enlarged in the status and scope of the law, the supreme court of Ohio has practically, industrially, and judicially, destroyed.
But another acid test to which this judgment must conform, is the test of the syllogism, to which the doctrine of the Patten case, adopted in this case, is readily reducible.
The syllabus of the Patten case, ante, 1, approved by the four judges, Hough, Robinson, Jones and Matthias, expressly uses this language:
“It [the scaffolding statute] merely prescribes a course of conduct recognizable at common law.”
Judge Hough in his concurring opinion, page 20, approves the same doctrine in the following language :
“In examining the elements of negligence charged in the petition, and the proof submitted thereunder in the bill of exceptions, in the present case, and analyzing both in the light of the provisions of Section 12593, General Code, I am able to find nothing over, above, or beyond a simon-pure common-law actiou for negligence.”
From this language of the majority judges reduced to a simple syllogism, for the purpose of applying the acid test of proof and reason to it, we have this formula:
Major premise. All common-law liability must be satisfied out of the workmen’s compensation fund.
*167 Minor premise. Section 1027, General Code, safeguarding dangerous machinery, etc., “merely prescribes a common-law liability.”
Therefore, all liability. under Section 1027, General Code, must be satisfied out of the workmen’s compensation fund.
If I am capable of understanding the somewhat loose language of the majority opinion, and the former decisions of this court, the above syllogism contains a fair statement in simple language of the majority’s present views of the law pertaining to Section 35, Article II of the Constitution, particularly the part dealing with “any lawful requirement.”
If this does not fairly state the position of the majority, then I demand in the interest of the people of Ohio, that some member of the majority shall more definitely and clearly state what that position is, so that the bar and the public may know.
I heartily approve and accept the major premise, to-wit: “All common-law liability must be satisfied out of the workmen’s compensation fund,” where the employer is a contributor to that fund, save of course where you have a wilful act of negligence, which is most unusual.
I as heartily disapprove and reject the minor premise, and shall now proceed to demonstrate its untruth and its unsoundness for the following reasons :
First. The very fact that the general assembly has seen fit to enact a statute to further safeguard dangerous machinery raises a strong presumption that it intended to increase the common-law duty or liability of the employer. Else why enact a statute *168 if a common-law duty was to be merely continued: that was already provided for and recognized by the courts? Why do a vain thing?
Second. The general assembly of Ohio on March 20, 1900, passed house bill No. 204, entitled: “An act to provide for the guarding of machinery.” This act made it an absolute and positive duty upon the employer not only to exercise “ordinary care,” but to meet the requirements of the statute.
Third. That statute, Section 1027, General Code, was amended in 1911, as found in 102 Ohio Laws, 428, and it was under this amended act that the plaintiff brought his suit in the common pleas court, and obtained his judgment in the court of appeals, which is now reversed by this court.
The opening paragraph of Section 1027 reads :
“The owners and operators of shops and factories shall make suitable provisions to prevent injury to persons who use or come in contact ivith machinery therein or any part thereof as follows: * * *
“7. They shall guard all saws, wood-cutting, wood-shaping and all other dangerous machinery.” The language is so simple and straightforward as to the duty of the employer, “The owners and operators of shops and factories shall make suitable provisions to prevent injury,” not merely exercise ordinary care in that behalf, which was the old common-law duty.
If there be any doubt about this latter proposition, the complete and radical change from “ordinary care” to a. positive and absolute duty, such inference and conclusion become perfectly plain when the former language of the statute, as passed *169 in 1900, is examined. The opening language of the act found in 94 Ohio Laws, 42, which is now Section 1027, General Code, then read:
“Section 1. That owners and operators of factories and workshops, which terms shall mean all manufacturing, mechanical, electrical and mercantile establishments, and all places where machinery of any kind is used or operated, shall take ordinary care, and make such suitable provisions as to prevent injury to persons who may come in contact with any such machinery, or any part thereof; and such ordinary care and such suitable provisions shall include * * V’
When the general assembly amended this act in 1911 it struck out the words “ordinary care,” the common-law liability, in all places in the statute. Does this mean that after the legislature, in order to raise the standard of duty, expressly struek out of the statute the words “ordinary care,” which is the measure of common-law liability, this court shall now put this language back into the statute by holding that it simply states the common-law liability of ordinary care?
In this clear conclusion I am sustained by two cases from this very court, u/nanimously concurred in. One of the latest declarations made touching this very statute by way of approval is found in Variety Iron & Steel Works Co. v. Poak, 89 Ohio St., 297. I quote the syllabus as follows:
“1. Section 1027, General Code, imposes upon the owners and operators of shops and factories the absolute and positive duty to cover, cut off or countersink keys, bolts, set-screws and all parts of wheels, shafting or other revolving machinery pro *170 jecting unevenly beyond the surface of such revolving machinery.
“2. In an action for damages predicated upon the failure of such owner or operator to comply with the requirements of this statute it is the duty of the court to instruct the jury that such failure is negligence per se.”
This case was decided February 3, 1914, and was concurred in by all the members of this court then sitting, as follows: Nichols, C. J., Shauck, Johnson, Donahue, Wanamaker and Wilkin. It was in this syllabus clearly held that the requirements of the statute were valid and legal, and that their violation in any particular, causing injury to a workman, was negligence for which recovery might be had.
It is admitted in the Poak case, supra, that the device by which the defendant in error was injured was included in Section 1027, General Code. Judge Newman in his opinion touching that' act said at page 303:
“By the provisions of the statute a positive and absolute duty is imposed upon the owners or operators of shops and factories. They are required to cover, cut off or countersink bolts, set-screws and all parts of wheels, shafting or other revolving machinery projecting beyond the surface of such revolving machine. There was a failure on the part of the company in this case to comply with this mandate in reference to the set-screw.
“The common-law duty of the employer to exercise ordinary care to provide for the employe here a safe place in which to work is changed by this statute. Whether or not the employer was in the exercise of ordinary care * * * is not the test when negligence is charged. The legislature in positive *171 terms has defined the duty of the employer in this respect. It is not for us to question the wisdom of such legislation, were we so disposed. The plain duty devolves upon the court to enforce the law unless it appears that the legislature has exceeded its authority and the act is clearly repugnant to the provisions of the constitution.”
But in a still later case, Acklin Stamping Company v. Kuts, 98 Ohio St., 61, a minor who was employed in violation of this statute brought an action for negligence against a contributor to the workmen’s compensation fund, under this same Section 1027, General Code, the dangerous machinery being a stamping machine, much after the manner of the machine involved in the ease now under consideration. The third paragraph of the syllabus reads:
“In an action by such a minor for damages on account of personal injuries claimed to have arisen from the failure of the employer to comply with a lawful requirement for the protection of the lives and safety of employes, the provisions of Section 29 of that act (Section 1465-76, General Code) do not apply.”
This Kuts case quoted the Poak case, supra, with approval, admitted that the minor had a valid claim in charging violation of that section as a lawful requirement, and the only question was whether or not the employer might avail himself by way of defense of contributory negligence on the part of the minor, his employment being in violation of the stat- . ute.
It is significant that in the Kuts case, supra, the dangerous machinery was a stamping device,' substantially like that we have in this SniegowsJci case.
*172 Judge Newman also wrote this opinion of the court, and the following judges concurred: Nichols, C. J., Wanamaker, Jones, Matthias, Johnson and Donahue. Neither in the Patten case nor in this Sniegowslii case is either the Poak case or the Kutz case in any wise discussed or referred to — so lightly are the former decisions and precedents of our courts discarded when they do not serve the immediate purpose, when they are clearly irreconcilable with the instant judgment.
If Section 1027, General Code, constituted a lawful requirement in the Poak case decided in 1914, and in the Kutz case decided in 1918, as to which all the members of the court concurred in both cases, when pray did this Section 1027 fail to be a lawful requirement under our constitution and laws, and what pray are the “reasons therefor?”
The Patten case and this case by the vote of four judges, Hough, Robinson, Jones and Matthias, a bare majority of the court, nullify the statute involved; a precedent is thus established by four judges in direct conflict with two decisions and two precedents established in 1914 and 1918 by a unanimous court in each case.
It has been contended that the employer must receive full immunity for his contribution to the compensation fund, and that when he makes his contribution to that fund he is thereby relieved from all further liability to his employe.
But that is not the language of the constitution. It expressly says that he shall not be relieved of any such liability where he fails to make proper safeguards for his employes by complying with “any lawful requirement,” including of course a lawful statute.
*173 . There is nothing harsh about this rule, because the employer has entire charge of his shop, factory, or mine, and can at comparatively small expense take and make proper safeguards for life, limb, health and safety of his employes. But even if it were a hardship, that is no argument against the law.
The same argument was made against the Federal Employers’ Liability Act, providing for safety of railway employes. Judge Moody of the United States supreme court, who in my judgment more nearly approximates the honored chief justice, John Marshall, in legal logic and plain phrasing of the law in its fundamentals, than does any other judge that ever sat upon that bench, wrote the opinion for the court in St. Louis, I. M. & S. Rd. Co. v. Taylor, Exrx., 210 U. S., 281, in which he used this language:
“In deciding the questions thus raised, upon which the courts have differed * * *, we need not enter into the wilderness of cases upon the common law duty of the employer to use reasonable care to furnish his employe reasonably safe tools, machinery and appliances, or consider when and how far that duty may be performed by delegating it to suitable persons for whose default the employer is not responsible. In the case before us the liability of the defendant does not grow out of the common law duty of master to servant. The Congress, not satisfied with the common law duty and its resulting liability, has prescribed and defined the duty by statute. We have nothing to do but to ascertain and declare the meaning of a few simple words in which the duty is described. It is enacted that ‘no cars, either loaded or unloaded, shall be used in interstate *174 traffic which do not comply with the standard.’ There is no escape from the meaning of these words. Explanation cannot clarify them, and ought not to be employed to confuse them or lessen their significance. The obvious purpose of the legislature was to supplant the qualified duty of the common law with an absolute duty deemed by it more just. If the railroad does, in point of fact, use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make compensation to one who is injured by it. It is urged that this is a harsh construction. To this we reply that, if it be the true construction, its harshness is no concern of the courts. They have no responsibility for the justice or wisdom of legislation, and no duty except to enforce the law as it is written, unless it is clearly beyond the constitutional power of the lawmaking body. It is said that the liability under the statute, as thus construed, imposes so great a hardship upon the railroads that it ought not to be supposed that Congress intended it. Certainly the statute ought not to be given an absurd or utterly unreasonable interpretation leading to hardship and injustice, if any other interpretation- is reasonably possible. But this argument is a dangerous one, and never should be heeded where the hardship would be occasional and exceptional. It would be better, it was once said by Lord Eldon, to look hardship in the face rather than break down the rules of law. But when applied to the case at bar the argument of hardship is plausible only when the attention is directed to the material interest of the employer to the exclusion of the interests of the employe and of *175 the public. Where an injury happens through the absence of a safe draw bar there must be hardship. Such an injury must be an irreparable misfortune to some one. If it must be borne entirely by him who suffers it that is a hardship to him. If its burden is transferred, as far as it is capable of transfer, to the employer, it is a hardship to him. It is quite conceivable that Congress, contemplating the inevitable hardship of such injuries, and hoping to diminish the economic loss to the community resulting from them, should deem it wise to impose their burden upon those who could measurably control their causes, instead of upon those who are in the main helpless in that regard. Such a policy would be intelligible, and, to say the least, not so unreasonable as to require us to doubt that it was intended, and to seek some unnatural interpretation of common words.”
These words of Justice Moody speaking for the supreme court of the United States read like the gospel of human conservation as applied to the safety appliance federal statute and harmonize with the spirit of the 20th century. Judge Newman, speaking for the supreme court of Ohio, used essentially the same doctrine in the Poak case.
How unlike the present words of the four judges of the supreme court of Ohio who concur in nullifying Section 1027, General Code, the safety statute of our workshops and factories, with provisions as to dangerous machinery, which, though held to be lawful requirements for more than twenty years, are now held to be unlawful requirements. The majority of the present Ohio supreme court speak not in the life and language of the 20th century, but in the life and language of the 17th.
*176 But there is yet another controlling reason why this judgment is unsound, unlawful and contrary to the constitution and the statutes enacted pursuant thereto.
Notwithstanding this court has continuously disregarded or ignored Section 34, Article II of the ponstitution, providing for the conservation of the comfort, health, safety and general welfare of all the employes of the workshops, factories, mines, etc., of Ohio, failing to even so much as notice much less apply it in any ease sinde its adoption in 1912, the general assembly of Ohio, at its first session held after the adoption of the new constitutional amendments of 1912, proceeded to carry out the mandate of the people expressed in Section 34.
In 1909 the supreme court of Ohio, without a dissent, decided the case of C., H. & D. Ry. Co. v. Frye, 80 Ohio St., 289. Part of the syllabus of that case reads: “In an action by an employe against his employer to recover damages for personal injuries, an instruction that the employer owed to his employe the duty to provide him a reasonably safe place in which to work, is erroneous, in that it imposes upon the employer a higher degree of care than the law lequires or exacts of him * * * but the limit of his obligation and duty in that behalf is to exercise reasonable and ordinary care, having due re - gard to the hazards of the service, to provide his employe with a safe place in which to perform his work.”
The old common-law doctrine of ordinary care, the measure of duty the employer owed to the employe, as thus defined by the supreme court, meant just no duty at all. If the employer exercises the ordinary *177 care used by ordinary employers he has discharged his ordinary duty and the employe gets his ordinary and usual injury for which there is ordinarily no liability. There is little wonder that the workingmen of Ohio demanded something better, something higher and more humane for their protection in the workshops and factories. Hence Section 34 of the Constitution and the legislation of 1913 followed. The general assembly of Ohio went to Wisconsin. There it found a law that met with favor and approval. It adopted it, or certain sections of it, not only in substance, but in syllables. In March, 1913, it passed what is now Section 871-15, General Code, which reads: “Every employer shall furnish employment which shall be safe for the employes therein, and shall furnish a place of employment which shall be safe for the employes therein, and for frequenters thereof, and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes, follow and obey orders and prescribe liours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employes and frequenters.” And Section 871-16, General Code, which reads: “No employer shall require, permit or suffer any employe to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and no employer shall fail or neglect to do every *178 other thing reasonably necessary to protect the life, health, safety and welfare of such employes or frequenters; and no such employer or other person shall hereafter construct or occupy or maintain any place of employment that is not safe.”
At the same time it passed Section 871-13, subdivision (11), which reads: “The terms ‘safe,’ and ‘safety,’ as applied to any employment or a place of employment, shall mean such freedom from danger to the life, health, safety or welfare of employes or frequenters as the nature of the employment will reasonably permit,” etc.
These three subsections of 871, General Code, adopted in 1913, were literally borrowed from the statutes of Wisconsin. They are written in Lincoln-like language put in the plain phrase of the people, and when unadulterated and unshorn by any court are clearly and conclusively a mandate to the employer not to exercise mere ordinary care, as known to the old common law of the old ages, but such care as will insure “such freedom from danger to the life, health, safety or welfare of employes or frequenters as the nature of the employment will reasonably permit.” In short, the highest practicable care.
Applying the doctrine of in pari materia, that is, that all statutes dealing with the same subject-matter must be taken together by their four comers and so applied as to give reasonable force and effect to each and all, how can it be said, when these sections are read into Section 1027, that Section 1027, as claimed by the minor premise, only states a “common-law liability?” The minor premise of the majority is false in fact and necessarily leads to a fallacious conclusion of law.
*179 It is strikingly significant that the supreme court of Wisconsin in a number of decisions, conspicuous among which are Besnys v. Herman Zohrlaut Leather Co., 157 Wis., 203, and Sadowski, Admx., v. Thomas Furnace Co., 157 Wis., 443, has had no difficulty about construing and applying the measure of care imposed upon the employers by these statutes which we borrowed from Wisconsin. The Sadowski case contains this syllabus:
“1. Secs. 2394-48, 2394-49, Stats., [same as Sections 871-15 and 871-16, Ohio statutes] are a part of a new system relative to industrial accidents, by which it was intended to substitute, in lieu of the ordinary rule requiring the master to come up to the standard of reasonable safety as to working place and conditions, the absolute duty to make the employment and place of employment as safe as the nature of the employment will reasonably permit.”
But why multiply the decisions of courts concerning language that is 100 per cent, clear and convincing as to its material meaning? Employers and employes have no difficulty understanding it and applying it. The only difficulty and division as to the meaning of these statutes seem to be with the judges.
The more we examine the minor premise, that Section 1027, General Code, in its various subdivisions states only a common-law liability, to-wit, the use of ordinary care on the part of the employer, the more we are convinced that this minor premise is without foundation in fact or law. The conclusion and judgment can be no more sound than the premises upon which they are based.
I candidly confess a preference for the many decisions I have cited in this dissenting opinion rather *180 than for the decision in the Patten case, cited as a precedent, which decision was concurred in by only four of the judges of this court, two of whom held and concurred in a contrary doctrine, as announced in the Kutg case.
If Section 1027, General Code, imposes neither civil nor criminal liability upon the employer when he violates it, what, pray, remains of the statute? Will somebody please draw a diagram? It has taken its place in the judicial cemetery. It can serve but one purpose, and that is as a tombstone, upon which should be inscribed the following epitaph:
“Here lies buried Section 1027, General Code.
“Bom in the General Assembly of Ohio, 1900.
“Hied in the Supreme Court of Ohio, 1922.
“Age 22 years.
“During its brief’ existence, it saved many lives and limbs, and protected thousands of workmen from dangerous machinery.
“Blessings on its memory.”